**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:17-cv-00096-GNS-CHL**

**MARY HODSON,**                                                                                              **Plaintiff,**

**v.**

**COMMISSIONER OF SOCIAL SECURITY,**                               **Defendant.**

**FINDINGS OF FACT, CONCLUSIONS OF LAW,
and RECOMMENDATION**

Before the Court is the complaint (DN 1) of plaintiff Mary Hodson ("plaintiff"). In her complaint, plaintiff seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner"). *See* 42 U.S.C. § 405(g) (2012) ("Any individual, after any final decision of the Commissioner of Social Security . . . may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision . . . ."). Plaintiff filed a Fact and Law Summary (DN 15) and supporting memorandum (DN 15-1). The Commissioner also filed a Fact and Law Summary (DN 18). Therefore, this matter is ripe for review.

This matter was referred to the undersigned for the preparation of a report and recommendation. For the reasons set forth below, the undersigned RECOMMENDS that the final decision of the Commissioner be AFFIRMED.

**I.     FINDINGS OF FACT**

Plaintiff protectively filed an application for disability insurance benefits alleging disability beginning July 23, 2013. (R. 99.) On December 10, 2015, Administrative Law Judge Patrick Kimberlin ("the ALJ") conducted a hearing on this application. Plaintiff attended the

hearing along with her attorney, Christopher Harrell. William Harpool, a vocational expert, testified at the hearing.

In a decision dated January 26, 2016, the ALJ engaged in the five-step evaluation process promulgated by the Commissioner to determine whether an individual is disabled. In doing so, the ALJ made these findings.

1. The claimant meets the insured requirements of the Social Security Act through December 31, 2018. (R. 32.)

2. The claimant has not engaged in substantial gainful activity since July 23, 2013, the alleged onset date. (*Id.*)

3. The claimant has the following severe impairments: history of breast cancer status/post bilateral mastectomies and chemotherapy, with residuals; mild cognitive disorder; major depressive disorder; posttraumatic stress disorder; history of mild cerebral palsy since birth; panic disorder; and hypothyroidism. (*Id.*)

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.* at 33.)

5. The claimant has the residual functional capacity ("RFC") to perform sedentary work as defined in 20 C.F.R. 404.1567(a) with no lifting over 10 pounds; no use of foot controls or pedals; no use of upper extremities above shoulder level; no climbing of ladders, ropes, or scaffolds; no exposure to hazards such as required driving, working at unprotected heights, or near dangerous machinery; no exposure to temperature extremes; simple routine job duties and instructions requiring only occasional work-related contact with coworkers and supervisors and no contact with the general public; and no kneeling or crawling and occasional to all other postural activities. (*Id.* at 35.)

6. The claimant is unable to perform any past relevant work. (*Id.* at 42.)

7. The claimant was born on April 3, 1970 and was 43 years old, which is defined as a younger individual, age 18-44, on the alleged disability onset date. The claimant subsequently changed age category to a younger individual age 45-49. (*Id.*)

8. The claimant has at least a high school education and is able to communicate in English. (*Id.*)

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (*Id*.)

10. Considering the claimant's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that she can perform. (*Id*.)

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 23, 2013 through the date of this decision. (*Id*. at 43.)

Plaintiff requested an appeal to the Appeals Council, which denied her request for review on December 22, 2016. (*Id*. at 2.) At that point, the ALJ's decision became the final decision of the Commissioner. 20 C.F.R. §§ 404.981, 422.210(a); *see also* 42 U.S.C. § 405(h) (discussing finality of the Commissioner's decision).

## II.     CONCLUSIONS OF LAW

The Social Security Act authorizes payment of disability insurance benefits to persons with disabilities. Social Security Act, Disability Insurance Benefits, 42 U.S.C. §§ 401-34 (2012). An individual shall be considered disabled if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a).

### A.     Standard of Review

In conducting its review, the Court may not try the case de novo, nor resolve conflicts in evidence, nor decide questions of credibility. *Garner v. Sec'y of Health and Human Servs*., 745 F.2d 383, 387 (6th Cir. 1984) (citing *Myers v. Richardson*, 471 F.2d 1265 (6th Cir. 1972)). Rather, the Court's review is limited to determining whether the findings set forth in the final decision of the Commissioner are supported by substantial evidence and that the correct legal

standards were applied. 42 U.S.C. § 405(g); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013); *Cole v. Comm'r of Soc. Sec.*, 661 F.3d 931, 937 (6th Cir. 2011). If the answer is "yes," then the Court may not even inquire as to whether the record could support a decision the other way. *Smith v. Sec'y of Health and Human Servs.*, 893 F.2d 106, 108 (6th Cir. 1989).

Substantial evidence exists when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way. *Cotton v. Sec'y of Health and Human Servs.*, 2 F.3d 692, 695 (6th Cir. 1993) (quoting *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993)) (internal quotation marks omitted). Therefore, "[a] reviewing court will affirm the Commissioner's decision if it is based on substantial evidence, even if substantial evidence would also have supported the opposite conclusion." *Gayheart*, 710 F.3d at 374.

### B. Five-Step Sequential Evaluation Process

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating a disability claim. 20 C.F.R. §§ 404.1520, 416.920. In summary, the evaluation proceeds as follows.

1. Is the claimant engaged in substantial gainful activity? If the answer is "yes," the claimant is not disabled. If the answer is "no," proceed to the next step.

2. Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement and significantly limits his or her ability to perform basic work activities? If the answer is "no," the claimant is not disabled. If the answer is "yes," proceed to the next step.

3. Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within Appendix 1 to Subpart P of Part 404 of this chapter? If the answer is "yes," the claimant is disabled. If the answer is "no," proceed to the next step.

4. Does the claimant have the RFC to return to his or her past relevant work? If the answer is "yes," then the claimant is not disabled. If the answer is "no," proceed to the next step.

5. Even if the claimant cannot perform past relevant work, does the claimant's RFC, age, education, and past work experience allow him or her to perform a significant number of jobs in the national economy? If the answer is "yes," the claimant is not disabled. If the answer is "no," the claimant is disabled.

*Id*.

The claimant bears the burden of proof with respect to the first four steps. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 422-23 (6th Cir. 2008). The burden shifts to the Commissioner at the fifth step to prove that there are available jobs in the national economy that the claimant is capable of performing. *Id*. at 423. The claimant, however, always retains the burden of proving lack of RFC. *Herr v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

### C. Plaintiff's Contentions

Plaintiff contests Findings 5, 9, 10, and 11 made by the ALJ. The undersigned will address each below.

#### 1. Finding 5 – RFC finding

Plaintiff takes issue with the RFC finding at step four in the sequential evaluation because it failed to (a) take into account the extensive number of medical appointments that she attends on a regular basis; and (b) include her need to use a cane. Because the ALJ did not include these limitations in the RFC, plaintiff argues that the ALJ was not permitted to rely on the vocational expert's testimony as substantial evidence to show that there were a significant number of jobs in the national economy that a person with plaintiff's RFC could perform; thus, plaintiff claims that

the ALJ's conclusion at step five in the sequential evaluation was not supported by substantial evidence either.[1] The undersigned will address each contention below.

### a. Plaintiff's medical appointments

The RFC finding is the ALJ's ultimate determination of what a claimant can still do in a work setting despite his or her physical and mental limitations. 20 C.F.R. 404.1545(a). The RFC finding is based on a consideration of medical source statements and all other evidence, medical and non-medical, in the record about what a claimant can do despite limitations caused by his or her physical and mental impairments. 20 C.F.R. 404.1529, 404.1545(a). In discussing the RFC, the ALJ noted that plaintiff had testified that she has medical appointments about three or four times a week; that someone takes her to physical therapy three times a week; and that she places her appointments on calendars. (R. 37.)

Plaintiff argues that Social Security Ruling ("SSR") 96-8p, 1996 WL 274184 (July 2, 1996) requires, among other things, that an ALJ must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (*i.e.*, eight hours a day, for five days a week, or an equivalent work schedule); SSR 96-8p also states that an ALJ must explain how any material inconsistencies or ambiguities in the evidence in the record were considered and resolved. Plaintiff avers that, although the ALJ noted her testimony describing three to four appointments each week, he made no statement about the effect that these appointments and the resulting absence from the workplace would have on her ability to maintain work activity on a regular and continuing basis; plaintiff also asserts that the ALJ made

---

[1] The undersigned points out that the arguments of plaintiff and the Commissioner regarding Finding 5 (RFC) at step four in the sequential evaluation and Finding 10 (jobs exist in significant numbers in the national economy that plaintiff can perform) at step five in the sequential evaluation go hand-in-hand with one very important distinction relevant here – plaintiff bears the burden of proof at step four in the sequential evaluation.

no finding about the need for these appointments. Plaintiff states that she submitted additional evidence – her calendar entries with her appointments from August to December 2015 – with the ALJ's permission after the hearing.

The Commissioner argues, among other things, that the ALJ did, in fact, consider the volume of appointments in his RFC evaluation, but plaintiff failed to meet her burden to show that her appointments necessarily conflicted with a work schedule and thereby required extensive absenteeism. The Commissioner also states that plaintiff's reliance on SSR 96-8p is misplaced because, under the language of same, she could work weekends or earlier shifts to facilitate scheduling her appointments. Finally, the Commissioner argues that the vocational expert's testimony regarding absenteeism is inapplicable because it was in response to a hypothetical that included a limitation that the ALJ did not reasonably adopt in his RFC finding. The Commissioner points to *Pryor v. Commissioner of Social Security*, 2015 WL 12683977 (E.D. Mich. Aug. 21, 2015), *report and recommendation adopted*, No. 14-13325, 2015 WL 6735336 (E.D. Mich. Nov. 4, 2015), in support of her position.

In *Pryor*, the claimant argued that the ALJ erred by failing to ask the vocational expert whether his need to attend physical therapy three times weekly for two to three hours per session would preclude his ability to work. The Court in *Pryor* recognized that, while physical therapy appointments could conceivably conflict with one's work in a manner that would render competitive employment impossible, the claimant had failed to set forth any facts or medical opinions which demonstrated that he required physical therapy on a rigid schedule that would conflict with his ability to work. *Id*. at *7 ("Pryor has not established any reason to think that he is unable to attend physical therapy sessions after work, on the weekends, during lunch, or on

7

some other schedule. The claimant is tasked with providing evidence in support of his alleged disability."). The Court in *Pryor* concluded that it could not, "on the scant evidence presented, simply assume that Pryor's access to therapy [was] so limited that he could not attend to both a competitive work schedule and his therapy sessions." *Id*.

The Commissioner argues that, like the claimant in *Pryor*, plaintiff did not establish any reason that she could not schedule and attend appointments around a work schedule and that she failed to meet her burden to show her appointment necessarily conflicted with a work schedule and thereby required extensive absenteeism. There is some legal support for the Commissioner's argument.

For example, in *Bray v. Comm'r of Soc. Sec.*, No. 1:13-CV-00040, 2014 WL 4377771, at *3 (S.D. Ohio Sept. 3, 2014), the claimant testified that she generally saw her counselor twice per month, and the record evidence showed that only two of the five discrete periods where she needed more frequent counseling occurred during the relevant period. The Court agreed with the magistrate judge's conclusion that the claimant had not presented any evidence that she would not be able to schedule sessions prior to work, after work, on a non-work day, or over a lunch hour to avoid missing work. The Court also rejected the claimant's argument that the magistrate judge improperly shifted the burden to the claimant by requiring the claimant to produce evidence on the expected rate of absenteeism during normal working hours. The Court stated, "Restrictions on a claimant's ability to sustain full-time work, due to the frequency of appointments, would fall within the analysis of her RFC on which she maintains the burden of proof." *Id*. at *2; *see also Swafford v. Comm'r of Soc. Sec.*, No. 1:12CV19, 2013 WL 1196590, at *1 (S.D. Ohio Mar. 25, 2013) (noting that "the ability to work on a regular and continuing

basis would be effected by frequent absences due to medical appointments" but that "evidence of frequent medical appointments alone is not enough. Instead, there must be evidence such as a medical source opinion about the likelihood of absenteeism caused by the claimant's impairments and the need for treatment during working hours.").

The undersigned has found two additional cases that are instructive.  In *Miller v. Astrue*, No. 1:12-CV-16, 2012 WL 6644390, at *8 (S.D. Ohio Dec. 20, 2012), *report and recommendation adopted*, No. 1:12-CV-16, 2013 WL 360375 (S.D. Ohio Jan. 30, 2013), the claimant contended that she was unable to sustain full-time work because her weekly injections required her to spend approximately two hours at the doctor's office each week.  The ALJ did not discount the claimant's testimony in this regard, but instead determined that the claimant was not disabled because it was pure speculation that she could not arrange to have the injections at a time and place that did not interfere with working full-time.  A medical expert testified that the two-hour time frame was a reasonable estimate, but opined that claimant could get the injection on Fridays, arguably before or after work.  The magistrate judge noted that plaintiff pointed to no medical opinions about the likelihood of absenteeism caused by her impairments, and that it remained plaintiff's burden to show that the frequency of her treatments was a limitation that should have been accounted for at step four in the sequential evaluation.  On the other hand, the magistrate judge noted that plaintiff had offered uncontested evidence that her current treatment regimen required two hours every Friday, and it was not clear from the record whether those treatments could generally be arranged during non-work hours.  While calling the issue close, the magistrate judge concluded that a remand for further fact finding was required.

In *Payne-Hoppe v. Comm'r of Soc. Sec.*, No. 1:11-CV-0097, 2012 WL 395472, at *16 (S.D. Ohio Feb. 7, 2012), *report and recommendation adopted*, No. 1:11-CV-97, 2012 WL 709274 (S.D. Ohio Mar. 5, 2012), the Court found that the ALJ erred at step five in the sequential evaluation by failing to fully account for the limitations imposed by the claimant's need to take leave from work for bi-weekly Soliris infusions. In doing so, the Court stated that the ALJ did not explain why he rejected the claimant's statement that her infusions require a few hours and ignored a treating physician's report that she must spend several hours in the clinic for each dose of Soliris infusions. The Court also found that the ALJ erred in failing to inquire of the vocational expert whether scheduled absences similar to those of the claimant's would preclude competitive employment or whether a significant number of jobs exist on night shift for a person with claimant's RFC. As a result, the Court remanded the matter to the ALJ.

The undersigned finds this situation to be more akin to *Pryor* and *Bray* and unlike the facts in *Miller* and *Payne-Hoppe*. As an initial matter, the undersigned notes that it is uncontested that plaintiff has several severe impairments. And while the undersigned is sympathetic to plaintiff's position, the problem for her is two-fold. First and foremost, there is a lack of medical evidence or testimony from medical sources with respect to the appointments that she requires (and the duration and frequency of same) due to those impairments. Unlike the claimants in *Miller* and *Payne-Hoppe*, the only evidence that plaintiff has submitted in support of her assertion that her impairments require so many appointments that she cannot work are (1) her testimony that she has three to four doctor's appointments a week, taking anywhere from an hour to three, for the past two and a half years; and (2) her own calendar entries from August to December 2015 showing scheduled appointments. (R. 83-85; 349-58.) The undersigned is not

questioning plaintiff's credibility in this regard; rather, the undersigned is tasked with determining whether plaintiff met her burden at step four in the sequential evaluation and whether the ALJ's decision not to include in the RFC absenteeism due to multiple weekly medical appointments was supported by substantial evidence. And, unlike the claimants in *Miller* and *Payne-Hoppe* who provided *specific* evidence or medical source statements with respect to the particular amount of time that each medical treatment required and for what specific impairment, plaintiff has not presented any evidence of this sort. The calendar entries that she provided are not linked to any evidence in her medical records (or from a medical source opinion) that the appointments were medically necessary for treatment of her impairments, how long was required for each, and how frequently they must occur.

Second, the courts in *Pryor* and *Bray* indicated that a claimant bears the burden of showing that his or her appointments necessarily conflict with a work schedule and cannot be scheduled prior to work, after work, or on a non-work day. Plaintiff has not done this either. As the Commissioner notes, SSR 96-8p, 1996 WL 374194 states that the RFC is an individual's maximum remaining ability to do sustained work activities for eight hours a day, for five days a week, *or an equivalent work schedule*. Plaintiff bears the burden of proof with respect to her RFC to perform sustained work activities on a regular and continuing basis, including the effects of treatment on same, *e.g.*, their frequency and duration. *Id*. at *5 ("The RFC assessment must be based on all of the relevant evidence in the case record, such as . . . [t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication) . . . ."). The undersigned notes that evidence with respect to the medical necessity of treatment, including duration and

frequency as discussed in the preceding paragraph, might necessarily have addressed the issue of ability to do sustained work activities. But, as the undersigned has noted, plaintiff did not present any medical record or medical source opinion regarding this issue. In short, plaintiff bears the burden at step four in the sequential evaluation process of proving lack of RFC due to medically necessitated absenteeism from work, which she has failed to do. As a result, the undersigned concludes that the ALJ was not required to include plaintiff's absenteeism due to the sheer number of medical appointments in the RFC. And, while it would have been helpful for the ALJ to state with particularity why he did not credit plaintiff's testimony regarding her weekly appointments, the undersigned finds that any such failure did not constitute reversible error in light of the absence of any medical record or medical source statement regarding same. Therefore, the undersigned concludes that plaintiff is not entitled to a remand on this basis.

### b. Plaintiff's use of cane

Plaintiff also argues that the record supports her need for and use of a four-pronged cane and/or walker, and that this should have been taking into account in the RFC.

Although the ALJ did not indicate the use of a cane in the RFC, he did note in his opinion that, while plaintiff had alteration of gait/lower extremity weakness during her follow up for her cancer treatment, she was reported to have had some improvement by August 2015. (R. 38.) The ALJ also noted plaintiff's long work history at sedentary and light work levels with cerebral palsy. (*Id.*) Importantly, the ALJ did note that the record indicated some cane use and a shuffling gait due to plaintiff's cerebral palsy. (*Id.* at 38-39.) The ALJ also noted, however, that the evidence was vague overall as to any precise physical limitations due to her history of

cerebral palsy, and that plaintiff was nonetheless placed at the sedentary exertional level with no use of foot controls and no hazards to compensate for same. (*Id*.)

Plaintiff points to three medical records in support of her assertion that the ALJ erred in failing to include in the RFC the use of an assistive walking device. First, plaintiff points to a consultative medical examination by Dr. Edgar Lopez-Suescum conducted on November 20, 2013. (R. 589-90.) Dr. Lopez-Suescum's note indicated, among other things, that plaintiff had recently undergone bilateral mastectomies in July 2013 and was still under the effect of active chemotherapy. (*Id*.) The note also stated that plaintiff reported that she uses a cane when she is by herself because she feels weak; the note concluded with a statement that the "use of a cane can be indicated [at] any time during the course of her disease as she feels too weak because of the treatment of her cancer. Her prognosis is questionable and too premature to say how she is going to do in the future." (*Id*.) Second, plaintiff points to a January 17, 2014 note from treating physician Dr. John Huber in which she received a prescription for a quad cane because of the exacerbation of neuropathy symptoms due to her chemotherapy treatment. (*Id*. at 656-57.) Third, plaintiff points to a May 11, 2015 note from treating physician Dr. Jeffrey Popham that states that plaintiff has been having gait problems since having breast cancer in 2013; it also notes that she "has tried a quad cane and walker." (*Id*. at 914.)

The undersigned concludes that the ALJ's RFC finding is supported by substantial evidence, even considering these medical records. First, as the Commissioner points out, the first two medical records indicate cane use in conjunction with weakness from temporary chemotherapy treatment; the third note indicates past use of a quad walker and cane.

Second, plaintiff's testified that the cane does not help all of the time. (*Id*. at 71.)

Third, plaintiff has not shown that the ALJ did not properly account for any limitations resulting from cerebral palsy or any gait problems in the RFC, which limited her to sedentary work with no use of foot controls and no hazards. *See Jozlin v. Comm'r of Soc. Sec.*, No. 12-CV-10999, 2013 WL 951034, at *9 (E.D. Mich. Mar. 12, 2013) ("Thus, even if the ALJ had included Plaintiff's alleged need to ambulate with a cane in her RFC, as Plaintiff indicated, the RFC would have limited her to sedentary work, and the VE testified that jobs existed in the economy for an individual with such limitations. Therefore, because Plaintiff has not shown that the ALJ erred in failing to include her cane as a limitation in her RFC, and because such an error would have been harmless, the Court will deny Plaintiff's Motion with respect to this issue.").

Fourth, this was not a situation in which the ALJ failed to address cane use at all; the ALJ did, in fact, explain that, while the record indicated some use of a cane, the medical evidence was vague with respect to any precise physical limitations due to plaintiff's history of cerebral palsy. *Cf. Watkins v. Comm'r of Soc. Sec.*, No. 1:16-CV-2643, 2017 WL 6419350, at *11 (N.D. Ohio Nov. 22, 2017), *report and recommendation adopted*, No. 1:16-CV-2643, 2017 WL 6389607 (N.D. Ohio Dec. 14, 2017) ("When the record contains prescriptions for walking assist devices, district courts in the Sixth Circuit have found that RFC determinations are not supported by substantial evidence when the ALJ, (i) acknowledged that a cane had been prescribed, (ii) did not include the use of the cane in the RFC, and (iii) provided no explanation for this omission.") (citing cases). Notably, plaintiff does not point to any medical records that contradict the ALJ's conclusion on this point.

Fifth, plaintiff has not pointed to medical records that indicate that the cane is medically necessary and under what circumstances, other than following temporary chemotherapy

treatment. *See, e.g.*, *Mitchell v. Comm'r of Soc. Sec.*, No. 13CV01969, 2014 WL 3738270, at *13 (N.D. Ohio July 29, 2014) ("As there is no medical documentation establishing that Mitchell required the use of a cane and describing the circumstances when it is needed, the ALJ did not err by omitting the use of a cane from his hypothetical questions to the vocational expert."); SSR 96-9p, 1996 WL 374185, at *7 (July 2, 1996) ("To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed (i.e., whether all the time, periodically, or only in certain situations; distance and terrain; and any other relevant information).").

In sum, the undersigned is limited to determining whether there is substantial evidence to support the ALJ's conclusion, even if there is substantial evidence in the record that would have supported the opposite conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). And, in this instance, the undersigned concludes that the ALJ's decision not to include specific mention of cane use in the RFC was supported by substantial evidence. *See, e.g.*, *Halama v. Comm'r of Soc. Sec.*, No. 1:12 CV 1859, 2013 WL 4784966, at *8 (N.D. Ohio Sept. 5, 2013) ("Here, even Halama does not contend that the record contains the 'unambiguous' statement of a physician containing the circumstances under which it would be medically necessary for him to use a cane. Inasmuch as there is no such statement in the record, I find that the decision of the ALJ in this case not to incorporate the use of a cane into the RFC is supported by substantial evidence."). *But cf. Ray v. Comm'r of Soc. Sec.*, 940 F. Supp. 2d 718, 727–28 (S.D. Ohio 2013) ("The Court finds reversal of the Commissioner's non-disability finding is warranted based upon the ALJ's failure to properly consider Plaintiff's prescribed ambulatory

device in formulating his RFC. Plaintiff was prescribed a cane by Michael Avery, D.O. at the Miami Valley Hospital Med/Surg Clinic in February 2011.  The record reflects Plaintiff requested the cane based upon knee pain and his leg 'giving out.' During his visit to the Clinic, a registered nurse conducted a 'Moving Safely Risk Assessment,' which noted Plaintiff's history of falls; his frequent confusion, disorientation, and restlessness; his problems with mobility, balance, vertigo, dizziness, use of assistive devices, difficulty rising from flat surfaces, and neuropathy; and his medications including hypertensives and laxatives.  In addition, Dr. Avery examined Plaintiff's leg, noted his knee pain to be a 'chronic problem ... though lately more bothersome,' found no swelling, but nonetheless prescribed a cane. Furthermore, follow-up treatment notes from April 2011 show the continued prescription for the cane, and list no 'end date' for the prescription.") (internal citations omitted).

### 2. Findings 9, 10, and 11

Although plaintiff's Fact and Law Summary (DN 15) states that she contests these findings, she provides no argument – other than possibly with respect to Finding 10 – regarding them in her brief.  Therefore, the undersigned deems any issue with respect to these findings waived.  *See United States v. Layne*, 192 F.3d 556, 567 (6th Cir. 1999) (finding that issues adverted to in a "perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived") (quoting *McPherson v. Kelsey*, 125 F.3d 989, 996-96 (6th Cir. 1997)) (internal quotation marks omitted).

With respect to Finding 10 – that there are jobs that exist in significant numbers in the national economy that plaintiff can perform – plaintiff appears to argue that, because the ALJ did not include certain limitations (absenteeism and cane use) in the RFC, the ALJ was not permitted

to rely on the vocational expert's testimony as substantial evidence to show that there were a significant number of jobs in the national economy that she could perform. However, the undersigned has determined that RFC was supported by substantial evidence. Furthermore, "a vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence *where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments*." S*mith v. Comm'r of Soc. Sec.*, 307 F.3d 377, 378 (6th Cir. 2001) (emphasis added). The ALJ is not required to include limitations that he does not deem credible when posing a hypothetical to a vocational expert. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477–78 (6th Cir. 2003) ("In sum, it was entirely proper for the ALJ to present the vocational expert with the hypothetical he constructed, which did not reflect Ms. Jones's complaints, including the constant crying spells, since the hypothetical was supported by substantial evidence in the record."). Therefore, although the vocational expert testified that "the mere number of doctor's appointment would create too much absenteeism to work . . . ," it is clear that the ALJ did not credit this limitation testified to by plaintiff. And, the vocational expert *did* testify that there were a significant number of jobs in the national economy that someone with plaintiff's RFC could perform. Consequently, the vocational expert's testimony on this issue constituted substantial evidence to support the ALJ's conclusion at step five in the sequential evaluation process as well. Therefore, Finding 10 was supported by substantial evidence.

### III. RECOMMENDATION

For the foregoing reasons, the undersigned RECOMMENDS that the final decision of the Commissioner be AFFIRMED.

cc: Counsel of record

### Notice

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations. A copy shall forthwith be electronically transmitted or mailed to all parties. 28 U.S.C. § 636(b)(1)(C). Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations. Fed. R. Crim. P. 59(b)(2). Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal. *Id.; United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985).